IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| RAY ANTHONY SHORTER,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security Administration,<br><br>Defendant. | CV 16-15-GF-BMM-JTJ<br><br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

## I. SYNOPSIS

On October 21, 2015, the ALJ determined that Mr. Shorter was not under a disability as defined in the Social Security Act. Mr. Shorter appealed the ALJ's decision. On January 26, 2016, the Appeals Council denied his request for review, making the ALJ's determination is the final decision of the Commissioner of the Social Security Administration. The Commissioner determined Mr. Shorter has the residual functional capacity to perform work that exists in significant numbers in

1

the national economy, despite severe impairments, and, therefore, is not disabled and not entitled to SSI benefits.  The Commissioner's determination is supported by substantial evidence and is not based on legal error.  Thus, the Court recommends that Mr. Shorter's Motion for Summary Judgment be denied, and judgment entered in favor of the Commissioner.

## II.  JURISDICTION

Although Mr. Shorter's opening brief failed to include a statement indicating that the Great Falls Division of the District of Montana is the proper venue for this action, the record indicates when Mr. Shorter commenced this action, he was a resident of Blaine County, Montana, which is in the Great Falls Division. 42 U.S.C. 405(g); Local Rule 1.2(c)(3). United States District Judge Brian Morris referred this case to the undersigned under 28 U.S.C. 636(b)(1)(B).

## III.  STANDARDS

### A.    Court's role

Review in this case is limited.  The Court may set aside the Commissioner's decision only when substantial evidence does not support the decision or the when the decision is based on legal error.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance."  *Desrosiers v. Sec. of Health and Hum. Services*, 846 F.2d 573, 576 (9th Cir. 1988).

The district court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion.  *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986).  The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

**B.    Disability criteria**

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy."  *Schneider v. Comm'r of Soc. Sec. Admin*., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof for steps one through four, and the Commissioner bears the burden of proof for step five.  *Id.* at 954. The five steps of the inquiry are:

1.  Is the claimant presently working in a substantially gainful activity?  If so, the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not, the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4.  Is the claimant able to do any work that he or she has done in the past?  If so, the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5.  Is the claimant able to do any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id*.

## IV.  BACKGROUND

### A.   Procedural history

4

Mr. Shorter first applied for disability benefits in November 2009. (Doc. 8-5 at 13.) He alleged he suffered from diabetes and depression, with an onset date from March 29, 2008 to June 25, 2009. (*Id*.) In April 2010, the Social Security Administration denied his application because it found that Mr. Shorter's diabetes and depression did not prevent him from being able to perform his past work. (Doc. 8-3 at 116.) Mr. Shorter filed a request for a hearing. (Doc. 8-3 at 119.)

In June 2011, following a hearing, the ALJ issued an unfavorable decision. (*Id*. at 24-33.)  Mr. Shorter appealed the ALJ's decision. (*Id*. at 39.) The Appeals Council found in favor of Mr. Shorter and remanded the case to the ALJ because it found the ALJ (1) did not adequately address the testimony of psychological expert Dr. Monty Kuka and consultative expert Dr. Anthony Golas, (2) did not properly evaluate Mr. Shorter's obesity, and (3) that further evaluation of Mr. Shorter's work activity was needed. (*Id*. at 39-41.)

In October 2013, the ALJ issued a second unfavorable decision, which Mr. Shorter appealed. (*Id*. at 46-59.) The Appeals Council found that the ALJ's October 2013 decision did not contain an evaluation of Dr. Kuka's opinion as the Council had required and did not address the opinion of medical expert Michael F. Enright. Ph. D. (*Id*. at 70.) The Appeals Council again found in favor of Mr. Shorter and remanded the case to a different ALJ. (*Id.* at 69-71.)

In February 2015, the ALJ issued a third unfavorable decision, which Mr. Shorter appealed. (*Id*. at 105.) The Appeals Council vacated the decision because the decision did not contain an evaluation of Nurse Practitioner Suzanne Lockwood's opinion that Mr. Shorter had marked mental limitations. (*Id*.) The Appeals Council once again remanded his case and instructed the ALJ to consider Ms. Lockwood's opinions. (*Id*.)

In October 2015, the ALJ issued a fourth unfavorable decision. (Tr. 18-44.) Mr. Shorter appealed that decision. In January 2016, the Appeals Council denied his appeal, making the October 2015 decision the final decision of the Commissioner. (*Id*. at 1-7.)

On February 29, 2016, Mr. Shorter filed this action seeking judicial review of the Commissioner's decision. (Doc. 1.) He filed an opening brief requesting the Court to enter summary judgment in his favor and reverse or remand the Commissioner's decision. (Doc. 9.) The Commissioner filed a response brief requesting the Court to affirm the Commissioner's decision. (Doc. 14.) Mr. Shorter filed a reply brief. (Doc. 15.)  The matter is ripe for decision.

**B.     ALJ's determination**

The ALJ initially determined that Mr. Shorter's records erroneously reflect that he meets the insured status requirements of the Social Security Act through

2015. (Tr. 23.) The ALJ found that Mr. Shorter's insured status actually expired in 2010. (*Id*.) Giant Eagle, Inc. has paid Mr. Shorter approximately $12,000 a year since 2011; however, these payments represent payments Mr. Shorter receives because he "opted-out" of the company's insurance benefits. (*Id*.) In the ALJ's determination, these payments do no count as earned wages or self-employment income and should not count towards Mr. Shorter's quarters of coverage under the Social Security Act. (*Id*.) Despite this finding, the ALJ continued to the five-step analysis of Mr. Shorter's claim. (*Id*.)

At step one, the ALJ determined that Mr. Shorter had not engaged in substantial gainful activity since his alleged onset date of March 29, 2008. (*Id.* at 24.)

At step two, the ALJ determined that as Mr. Shorter has the following severe impairments that have a significant effect on his ability to perform basic work activities: major depressive disorder and dysthymic disorder. (*Id.*) The ALJ acknowledged that Mr. Shorter has diabetes mellitus, hypertension, dyslipidemia, obesity, hematuira and fatty liver, left shoulder pain, and recently had cataract surgery. (*Id*.) The ALJ, however, did not find that these impairments significantly impacted Mr. Shorter's ability to perform basic work activities. (*Id*.)

At step three, the ALJ evaluated Mr Shorter's impairments with respect to

two different time periods, June 2009–June 2011 and June 2011–September 2013,

and determined that Mr. Shorter does not have an impairment or combination of

impairments that meets or equals one of the impairments listed in 20 C.F.R. Part

404, Subpart P, or Appendix 1. (*Id.* at 26.)

   Before considering step four, the ALJ determined that Mr. Shorter had the

residual functional capacity to perform a full range of work at all exertional levels

with some non-exertional limitations. (*Id.* at 28.) The ALJ found that Mr. Shorter

can "understand, remember, and carry out unskilled tasks up to a vocational

preparation level of two." (*Id.*) The ALJ likewise found Mr. Shorter could "persist,

pace himself, and concentrate for eight-hour workdays and forty-hour work

weeks." The ALJ also found that although Mr. Shorter could not work at a fixed

production pace, he could do goal-oriented work and "tolerate occasional

interaction with supervisors and coworkers." (*Id.*) Finally, the ALJ found Mr.

Shorter could "tolerate occasional interactions with the public" but could not "deal

with the public as one of his job duties." (*Id.*)

   At step four the ALJ then determined that Mr. Shorter's residual functional

capacity did not preclude him from performing past relevant work as a warehouse

worker. (*Id.* at 42.) This finding led the ALJ to conclude that Mr. Shorter did not

meet the Social Security Act's definition of disabled for the time period between

March 2008 and the date of his decision. (*Id*. at 44.)

### C.    Mr. Shorter's Position

Mr. Shorter argues that the ALJ erred in determining that he did not meet the Social Security Act's definition of disabled as of March 29, 2008 through October 2016. Mr. Shorter argues that the ALJ's decision (1) failed to reasonably assess his severe impairments at Step 2 by failing to consider the impact of his obesity on his depressive disorder, (2) failed to properly determine his residual functional capacity by discounting his subjective complaints and failing to give proper weight to the opinions of treating mental health care providers and other sources, and (3) failed to support the finding at Step five with substantial evidence. Mr. Shorter also argues the ALJ improperly found that his insured status was not December 31, 2015. (Doc. 9 at 9-10.); that the ALJ erred by denying his request for a prehearing conference; and that the Commissioner violated the local rules by not including a statement of facts in his reply brief. (Doc. 9 at 1.)

### D.    The Commissioner's Position

The Commissioner argues that the ALJ determination that Mr. Shorter was not disabled is supported by substantial evidence and is not based on legal error. The Commissioner further argues that the ALJ was not required to hold a prehearing conference. (Doc. 14 at 6.) Thus, the Commissioner argues that the

Court should affirm her decision.

## V.  ANALYSIS

The Court finds after a review of the record that the ALJ was not required to hold a prehearing conference and that the ALJ's determination is not premised on legal error and is supported by substantial evidence. The Court recommends that the district court grant summary judgement for the defendant.

### A.    The ALJ's decision to not hold a prehearing conference

Mr. Shorter argues that the ALJ erred by denying Mr. Shorter's request for a prehearing conference. (Doc. 9 at 20.) The Court disagrees.

A prehearing conference is permissive. 20 C.F.R. § 404.961. The ALJ has the discretion to grant or deny a request for one. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The Social Security regulations require only reasonable notice and an opportunity for a hearing. 42 U.S.C. § 405(b)(1). Thus, the Court finds that the ALJ's did not err when she denied Mr. Shorter's request for a prehearing conference.

### B.    The Commissioner's lack of a statement of facts in her response brief.

Mr. Shorter argues that the Commissioner violated Local Rule 78.2(c)(2) by failing to include a statement of facts in her Response Brief. (Doc. 15 at 2.) Local

Rule 78.2(c)(2) states that "principal briefs must contain a concise statement of the case setting out the facts relevant to the issues submitted for review." The Court finds that the Commissioner's Response Brief satisfied the local rules by containing a concise statement of the case. The facts in this case are not before the Court. Instead, the Court must interpret whether the ALJ properly considered the facts of the case and applied the law correctly. The Court finds that the Commissioner's Response Brief did an adequate job of arguing the issues before the Court.

### C. The ALJ's assessment of Mr. Shorter's severe impairments

#### 1. Legal Standards

The Social Security Act requires the ALJ to determine whether the claimant has a severe medically determinable impairment at step two of the evaluation process. 20 C.F.R. § 404.1520(a)(4)(ii). The Act defines a severe impairment as an impairment, or combination of impairments, that significantly limits a claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 404.1521. A medically determinable impairment is one that is "established by medical evidence consisting of signs, symptoms, and laboratory findings." *Id.* § 404.1508.

#### 2. Analysis

The ALJ determined that Mr. Shorter had the following severe impairments

at Step 2 of the evaluation process: major depressive disorder and dysthymic disorder. (Tr. 24.) Mr. Shorter argues that the ALJ improperly omitted obesity. The Court disagrees.

The ALJ noted that the medical record indicated that Mr. Shorter is obese. (*Id*. at 25.) The ALJ also noted, however, that no accepted medical source had diagnosed him with obesity. (*Id*.) The ALJ further found that Mr. Shorter's medical records reflect that his body mass index scores are in the low 30s, which shows a limited level of obesity, and that his gait is normal. (*Id*.) Given these exam results, the ALJ found no evidence that obesity restricted Mr. Shorter's ability to perform basic work activities. (*Id.*)

Mr. Shorter merely makes a conclusory statement that the ALJ's finding was improper without providing any specific argument as to why. (Doc. 9 at 10.) When a claimant fails to specifically argue a matter in his opening brief, courts ordinarily will not consider the matter on appeal. *Carmickle v. Comm' r, Social Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Furthermore, in *Burch v. Barnhart*, the Ninth Circuit held that an error in finding obesity as a serve impairment is harmless if "there is no evidence in the record of any functional limitations" caused by a claimants obesity that the ALJ failed to consider. 400 F.3d 676, 684 (9th Cir. 2005). Given Mr. Shorter's failure to argue with specificity that the ALJ's

omission of his obesity was an error and the lack of medical evidence in the medical record of any functional limitations caused by his obesity, the Court finds that the ALJ's conclusion that Mr. Shorter's obesity was not a severe impairment is supported by substantial evidence and is not based on legal error.

### D. The ALJ's assessment of Mr. Shorter's residual functional capacity.

#### 1.     Legal Standards

A claimant's residual functional capacity is the type of work related activities a claimant can still perform despite his limitations. 20 C.F.R. § 404.1545(a). The ALJ must consider all relevant evidence in the record when determining a claimant's residual functional capacity. *Id*. The ALJ then determines a claimant's ability to perform the "physical, mental, sensory, and other requirements of work." *Id*. at (a)(4).

Commonly, the medical records will provide conflicting opinions and evidence regarding a claimant's residual functional capacity. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). It is the ALJ's duty to resolve these conflicts. *Id*. The ALJ must resolve any conflicts in the testimony and decide any questions of credibility. *Morgan*, 169 F.3d at 599. When a claimant has an impairment that could be expected to cause the symptoms he alleges and there is no evidence that the claimant is malingering, the ALJ must provide "specific, clear, and convincing

reasons" for discrediting the claimant's testimony about the pain he suffers. *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). A general credibility finding will not suffice. *Brown-Hunter v. Colvin*, 8006 F.3d 487, 490 (9th Cir. 2015). If the ALJ's findings are supported by reasonable inferences of the conflicting evidence in the record, a court must uphold them. *Molina v. Asture*, 674 F.3d 1104, 1111 (2012).

### 2. Analysis

Mr. Shorter argues that the ALJ failed to properly determine his residual functional capacity by discounting his subjective complaints and failing to give proper weight to the opinions of treating mental health care providers and other sources. The Commissioner argues the ALJ provided valid reasons for (1) discounting Mr. Shorter's subjective complaints, (2) for the weight assigned to the opinions of acceptable medical sources, and (3) for the weight assigned to other source opinions. The Court agrees with the Commissioner.

### a.    Mr. Shorter's subjective complaints

Mr. Shorter testified that he has auditory hallucinations, suicidal thoughts, trouble concentrating, focusing, understanding, following instructions, completing tasks, socializing, getting along with others, and tends to isolate. (Tr. 29.) He further alleged that his impairments prevent him from lifting, squatting, bending,

standing, reaching, walking, sitting, kneeling, talking, hearing, and climbing stairs. (*Id*.) The ALJ determined that Mr. Shorter's daily activities and medical records did not corroborate these complaints. (*Id*.)

### i.     Mr. Shorter's daily activities

An ALJ must consider a claimant's daily activities when determining his residual functional capacity. 20 C.F.R. § 404.1529(c)(3)(I). An ALJ may reasonably discount a claimant's subjective complaints when the claimant's daily activities are inconsistent with his alleged symptoms. *Garrison*, 759 F.3d at 1016. If the record is ambiguous or incomplete, a court has a duty to conduct an appropriate inquiry. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The Ninth Circuit does not require, however, that the ALJ give the claimant a chance during a hearing to explain inconsistent statements or other factors that lead to a finding that a claimant is not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Here, the ALJ found that despite Mr. Shorter's complaints regarding his mental and physical limitations, he routinely attends to his personal care, drives, shops, attends church, reads the Bible and the newspaper, does crossword puzzles, and watches television for hours at a time. (Tr. 29.)

Mr. Shorter argues that his shopping is actually for fast food and that he

sometimes does not make it to church because he is depressed. He also argues that the ALJ made no effort to question him about these inconsistences at his hearing.

As discussed above, the ALJ had no duty to question Mr. Shorter about the inconsistences between his daily activities and his subjective complaints during the hearing. The Court finds that the ALJ's determination that Mr. Shorter's daily activities contradict his subjective complaints is reasonable. Mr. Shorter's arguments are merely an alternative interpretation of the evidence in the record. Because the Court finds that because the ALJ's interpretation of the facts is not based on legal error and is supported by substantial evidence, it must be affirmed. *Molina*, 674 F.3d at 1111.

### ii.    The medical record concerning Mr. Shorter's complaints.

An ALJ must consider the objective medical evidence in the record when assessing a claimant's subjective complaints. 20 C.F.R. § 404.1529(c)(2). The ALJ may not rely solely on the fact that the medical evidence does not fully corroborate a claimant's subjective complaints to discount a claimant's testimony. *Rollins*, 261 F.3d at 857. Any inconsistences between the claimant's complaints may, however, be a relevant factor in the ALJ's decision. *Id.*

Here, the ALJ determined that the medical evidence did not support Mr. Shorter's subjective complaints. (Tr. 29.). The ALJ found that Mr. Shorter's

complaints conflicted with the finding of Drs. Monty Kuka, Michael Enright, and Anthony Golas. (Tr. 35-36; 983-90.)   The ALJ also determined that medical record showed that Mr. Shorter failed to put forth his best effort during testing, and that despite Mr. Shorter's complaints that he has issues with his memory and an inability to focus, memory testing showed that his memory was in some instances normal, and mental status tests showed, at most, mild dysfunction. Finally, the ALJ found that the record showed that Mr. Shorter commented that his condition generally improved when he took his medicine in the correct dosages. (Tr. 29-33.)

Mr. Shorter asserts that the ALJ improperly discounted his subjective complaints by "cherry pick[ing] irrelevant findings" to show that his condition had improved. (Doc. 9 at 16.)   The Commissioner argues that this is untrue for three reasons: (1) the ALJ gave full consideration to the range of Mr. Shorter's exhibited symptoms, (2) the ALJ is not required to discuss every piece of evidence in the record, and (3) the ALJ's assessment reflects the highs and lows of Mr. Shorter's functioning. The Court agrees with the Commissioner.

First, while the ALJ did ultimately find that Mr. Shorter's testimony regarding the severity of his symptoms was not credible, she cited several instances where Mr. Shorter's functioning declined. The ALJ cited memory deficits. (Tr. 30-33, 987, 1074, 1076.) The ALJ also cited periods when Mr. Shorter has depressed

moot and affect. (Tr. 30-32, 928, 978, 982, 1114, 1119-20, 1125-26.) Finally, the ALJ noted poor mental status exams. (Tr. 31-33. 1074, 1114, 1119-20, 1125-26.) Therefore, the Court finds the ALJ considered the full range of exhibited symptoms in reaching her conclusion.

Second, an ALJ is required to provide a "thorough discussion and analysis of the objective medical and other evidence in assessing a claimant's subjective complaints." SSR 96-8p, 1996 WL 374184, at *7. Yet, an ALJ is not required to "discuss all evidence presented to her" but instead must simply "explain why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, the ALJ noted specific examples where he found the medical record to contradict Mr. Shorter's subjective complaints, including that Mr. Shorter was able to do all of his normal daily activities and that several examinations showed that his condition had improved. (Tr. 29-33.) The Court finds that this was sufficient to explain why the ALJ rejected Mr. Shorter's complaints.

Finally, the regulatory scheme allows for the normal highs and lows that often accompany a claimant's symptoms. 20 C.F.R. pt 404, Subpt. P, App. 1 at Listing 12.00D.2. An ALJ must consider any variations in a claimant's level of functioning in order to properly evaluate the severity of the claimant's

18

impairments. *Id*. It is the ALJ's responsibility to determine the credibility of a claimant's subjective complaints and to resolve conflicts in the medical record. *Magallanes v. Bowman*, 881 F.2d 747, 750 (9th Cir. 1989). Substantial evidence review does not allow a court to reweigh evidence or substitute its judgment for the ALJ's. *Winans v. Bowen*, 843 F.2d 643, 644-45 (9th Cir. 1987). Although Mr. Shorter argues that the ALJ erred by relying on reports that indicated his condition had improved, the regulatory scheme requires the ALJ to consider such evidence in making her determination. The Court, therefore, finds that the ALJ's determination that the medical record did not corroborate Mr. Shorter's subjective complaints is supported by substantial evidence and not based on legal error.

### b.     The opinions of acceptable medical sources.

Determining whether a claimant has a medially determinable impairment requires evidence from acceptable medical sources. 20 C.F.R. § 404.1512(a). The regulations define acceptable medical sources as licensed physicians, licensed or certified psychologist, or when relevant, licensed optometrists or podiatrists. *Id*.

A treating physician's opinion is typically given the greatest weight when determining whether a claimant is disabled. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Yet, when the opinions of treating and non-treating physicians differ, the ALJ may give less weight to a treating physician's opinion if

she provides "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Id*. A non-treating physician's opinion by itself does not constitute substantial evidence. *Id*. These opinions must also be consistent with other evidence in the record. *Id*. Both medical or non-medial evidence can potentially satisfy the substantial evidence test, depending on the facts of the case. SSR 96-2., 1196 WL 374188, at *4.

Mr. Shorter agues that the ALJ improperly discounted the opinions of treating physicians Drs. Anthony Golas, Michael Malayil, Erin Ulano, and Evan LaRocque and Nurse Practitioner Susan Lockwood and instead gave greater weight to the opinions of  Drs. Monty Kuka, Jim Capage, Thomas Lauderman, Joseph Shaver, Michael Enright, and A. Rafael Gomez. (Doc. 9 at 21.) The Court disagrees.

### i.       The opinions of non-examining medical sources

The ALJ assigned significant weight to the opinions of Drs. Kuka, Capage, and Shaver. The ALJ also assigned "some weight" to the opinion of Dr. Enright. The ALJ could legitimately credit the testimony of Drs. Kuka and Enright because they testified at the hearing and were subject to cross examination. *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). The ALJ also properly assigned weight to the opinions of Drs. Capage and Shaver because their testimony was

consistent with other evidence in the record. *Tonapetyan*, 242 F.3d at 1149. The opinions of these doctors are consistent with the evidence the ALJ cited in her determination of Mr. Shorter's RFC. (Tr. 28-42.) The ALJ also gave specific and legitimate reasons for the weight she assigned to these opinions. (Tr. 33-36.)

### ii.   The opinions of examining sources

The ALJ gave little weight to the opinions of Drs. Malayil, Ulano, and LaRocque. (Tr. 36-38.) Mr. Shorter argues that the ALJ needed to provide clear and convincing reasons for discounting the opinions of these examining physicians. (Doc. 9 at 23.) This is incorrect. The regulations only required the ALJ to provide specific and legitimate reasons for discounting the treating physician's opinions since the opinions of the non-examining medical sources were inconsistent with the opinions of Drs. Mayayil, Ulano, Golas, and LaRocque and with the Global Assessment of Functioning scores. 20 C.F.R § 404.1527(c)(2)

### a.   Opinion of Dr. Golas

Mr. Shorter argues that the ALJ did not give adequate weight to the opinion of treating physician Dr. Anthony Golas. The Court disagrees. Contrary to Mr. Shorter's contention, the ALJ actually gave "some significant weight" to Dr. Golas's opinion. (Tr. 35.) The ALJ found that Dr. Golas's opinion that Mr. Shorter had marked deficiency in concentration, varying deficiencies in memory, a normal

ability to stay on task equated to a "less than marked limitation overall." (Tr. 35-36.)  Mr. Shorter seems to argue that the ALJ improperly interpreted Dr. Golas's report. Again, the Court disagrees.

An ALJ may properly consider consistency with the record when assigning weight to a medical opinion. 20 C.F.R. 1527(c)(4). The ALJ found that her interpretation of Dr. Golas's opinion was consistent with limited mental status exams that were performed around the same time as Dr. Golas's evaluation. (Tr. 36) (citing Tr. 973-982; 1003-1012). The Court finds that this was an adequate basis for the ALJ's interpretation of Dr. Golas's report.

### b.     Opinion of Dr. Malayil

Mr. Shorter argues that the ALJ improperly discounted the opinions of Dr. Malayil. (Doc. 9 at 20.) The Court disagrees. The ALJ provided specific reasons for the weight she assigned to Dr. Malayil's opinions. (Tr. 36-37, 974-82, 1052-59.)

First, the ALJ determined that Dr. Malayil's opinions were inconsistent with the record as a whole. (Tr. 37.) The ALJ noted that Dr. Malayil stated that Mr. Shorter had limited ability to understand, remember, and carry out detailed instructions; to work with others without being distracted by them; to interact with the general public; to ask simple questions, and to get along with coworkers

22

without distracting them or exhibiting behavioral extremes. (Tr. 1055-56.) Yet, as the ALJ also noted, mental status test showed that Mr. Shorter suffered from only mild dysfunction. (Tr. 29-32, 929-30, 927, 978, 993, 1003-06, 1048, 1077, 1107-08, 1110-11, 1144, 1147-48, 1151-52, 1198-99, 1207-08.) An ALJ may properly consider these types of inconsistences when assigning weight to an opinion. 20 C.F.R. § 404.1527(c)(4).

Second, the ALJ noted that Dr. Malayil's opinion was inconsistent with his most recent treatment notes. (Tr. 37.)  Dr. Malayil's opinion was that Mr. Shorter had more than moderate limitations. Yet, his most recent mental status exam's findings were unremarkable, and the GAF score at that time of 70 indicated only transient or slight symptoms. Am. Psychiatric Ass'n., *Diagnostic and Statistical Manual of Mental Disorders* 845 (4th ed., text rev. 2000) ("DSM-IV-TR"). This is an acceptable reason to discount a medical opinion. 20 C.F.R.§ 404.1527(c)(3); *Bayliss c. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The Court finds that weight the ALJ assigned to the Dr. Malayil's opinion was not improper since the ALJ provided specific and legitimate reasons for doing so.

### c.      Opinion of Dr. LaRoque

Dr. Eva Laroque is the medical director for the Center of Mental Health.

(Doc. 9 at 26.) In that role, Dr. Laroque supervised several nurse practitioners, including Susan Lockwood. (Id.) Dr. Laroque stated that she believed nurse practitioners at the Center could diagnose psychiatric issues because of the training they receive and the supervisory arraignments in place at the Center. (*Id.*) The ALJ considered the opinion of Dr. LaRoque and gave it little weight. (Tr. 38.) Mr. Shorter argues that this was an error because Dr. LaRouge reviewed the opinion of Nurse Practitioner Susan Lockwood and adopted it. (Doc. 9 at 26.) According to Mr. Shorter, once Dr. Laroque reviewed Nurse Practitioner Lockwood's opinions, the ALJ had a duty to treat those opinions as those of a treating physician. (Doc. 9 at 27.) The Court disagrees.

First, the Court finds that the ALJ properly discounted Dr. Laroque's statement that nurse practitioners under her may render accurate psychiatric diagnoses as being inconsistent with the Commissioner's regulations, which state that only acceptable medical sources may diagnose. 20 C.F.R. § 404.1513(a). The ALJ further noted that the record does not indicate that Dr. LaRoque actually reviewed the opinion. (Tr. 38.)

Second, the Court finds that the ALJ properly discounted Dr. Laroque's adoption of Nurse Practitioner Lockwood's opinion because the ALJ found that the opinion was inconsistent with Nurse Practitioner Lockwoods's most recent exam

24

records. (Tr. 39.) The ALJ noted that at two previous appointments Nurse

Practitioner Lockwood stated that Mr. Shorter's medication had managed his

symptoms effectively and his mental exam was largely normal. (*Id.*) She further

noted that Mr. Shorter was smiling and joking, reading, doing crossword puzzles

and sodoku, and was "doing better." (*Id.*) Thus, the Court finds the ALJ provided

sufficient reasons for the weight she assigned to Dr. Laroque's opinion.

### d.     Dr. Ulano

Mr. Shorter argues that the ALJ erred by not giving significant weight to the

opinion of Dr. Ulano because her opinion was consistent with Dr. Golas's and was

supported by substantial evidence. (Doc. 9 at 32) The ALJ gave little weight to the

GAF scores provided by Dr. Ulano because the scores were based solely on Mr.

Shorter's statements regarding his symptoms, which the ALJ found were not

consistent with the improvement he experienced under Nurse Practitioner

Lockewood's care. (Tr. 37.) The Court finds that for this reason and the reasons

stated below, the ALJ's determination was based on substantial evidence and free

from legal error. *See infra* 2.c.

### c.     GAF Scores

The ALJ discounted Mr. Shorter's GAF scores in the record stating that they

were vague and represented mere snapshots of functioning. (Tr. 36-41.) The

Commissioner argues that this determination was reasonable. (Doc. 14 at 21.) The Court agrees.

A GAF score can reflect either symptoms or functioning but does not state which. DSM-IV-TR at 32. The fact that, due to their subjectivity, symptoms "alone are not enough to establish" mental impairment makes this lack of distinction significant. 20 C.F.R. § 404.1528(a). Federal regulations state that a GAF score does not clarify whether a patient has a potentially disabling mental impairment. *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed. Reg. 50746 at 50764-50765 (Aug. 21, 2000). Thus, the Court finds GAF scores alone cannot show whether a patient is disabled and that the ALJ's decision to afford the scores little weight was supported by substantial evidence and free from legal error.

### d. Opinion of other medical sources

### 1.   Susan Lockwood

The ALJ gave little weight to Nurse Lockwood's May 2013 opinion and no weight to her December 2012, March 2014, and October 2014 opinions because the ALJ found that Nurse Lockwood was "not an acceptable medical source under the Social Security regulations and her opinions were inconsistent with her findings." (Tr. 38-41.) Mr. Shorter argues the ALJ erred by discounting Nurse

Lockwood's opinions. (Doc. 9 at 29.) The Commissioner argues (1) that Nurse Lockwood is an other medical source and as such, the ALJ was not required to give the same deference as acceptable medical sources, and (2) that the ALJ provided germane reasons for discounting her testimony. The Court agrees with the Commissioner.

The Social Security regulations catagorize Nurse Practitioners as "other" medical sources. 20 C.F.R. § 404.1513(d)(1). An ALJ is not required to give these sources the same deference as acceptable medical sources. *Molina*, 674 F.3d at 1111. An ALJ may discount the opinions of other medical sources when she has a germane reason to do so. *Id.*

Mr. Shorter argues that ther ALJ should have considered Nurse Lockwood to be an treating doctor due to Dr. Laroque's supervision of her work. (Doc. 9 at 26.) The Ninth Circuit has specifically rejected this position. *Molina*, 674 F.3d at 1111. Thus, the Court finds that the ALJ did not commit legal error by categorizing Nurse Lockwood as an other medical source and was only required to provide germane reasons for discounting her opinions. The Court finds the ALJ met this burden.

The ALJ explained the weight she assigned to Nurse Lockwood's opinions by noting that at the time of Nurse Lockwood's December 2012 opinion she had

only been treating Mr. Shorter for a short time. (Tr. 40.) This is a germane reason for discounting medical testimony. *Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir, 1995). The ALJ also noted that Nurse Lockwood's May 2013 opinion lacked an explanation. (Tr. 38.) This is a likewise a germane reason for discounting medical testimony. 20 C.F.R. § 1527(c)(3). The ALJ further noted that Nurse Lockwood provided multiple opinions that were inconsistent with her exam findings. (Tr. 38.) The ALJ pointed the Nurse Lockwood's exam notes, which stated Mr Shorter was improving after restarting his medication (Tr. 38, 40-41 1(citing Tr. 1100-11.)) and that he said was "feeling pretty good" or "doing fairly well" on multiple occasions. (Tr. 1197, 1150.) The ALJ found these notes to be inconsistent with Nurse's Lockwood's opinion that Mr. Shorter had problems with understanding, memory, concentration and persistence, social interactions, and adaption. (Tr. 38, 1095-97.) This is a determination that an ALJ may properly make, and the Court may not reweigh the evidence in the record. *Bayliss*, 427 F.3d at 1216; *Molina*, 674 F.3d at 1111. Thus, the Court finds that the ALJ provided germane reasons for the weight she assigned to Nurse Lockwood's opinions and that these reasons are supported by substantial evidence.

### 2.      The opinion of Physician's Assistant Patrick Armstrong

Mr. Shorter argues the ALJ improperly discounted the opinion of Physician's Assistant Patrick Armstrong. (Doc. 9 at 29.) The Commissioner argues that the ALJ provided germane reasons for the weight she assigned to Mr. Armstrong's opinions. (Doc. 14 at 27.) The Court agrees with the Commissioner.

The ALJ explained the weight she assigned to Mr. Armstrong's opinions by noting that he is not an acceptable medical source. (Tr. 39.) The ALJ first noted that Mr. Armstong's opinions were inconsistent with the opinions of acceptable medical sources like Drs. Kuka, Enright, Capage, and Shaver. (*Id*.) This is a valid reason to discount medical testimony from other medical sources. *Molina*, 674 F.3d at 1111.  Next, the ALJ noted that Mr. Armstrong's opinion did not comment on Mr. Shorter's reported  depression in its analysis. This is a valid consideration under the Social Security regulations.  20. C.F.R. § 404.1527(c)(3). Thus, the Court finds the ALJ gave germane reasons for the weight she assigned to Mr. Armstrong's opinions.

### E.      The ALJ's determination at step five

Mr. Shorter seems to argue that the ALJ erred by asking the vocational expert a question that was not supported by the evidence or does not reflect the Mr. Shorter's limitations. (Doc. 9 at 34.) The Commissioner argues the hypothetical

contained all the limitations that the ALJ found credible. After reviewing the records, the Court agrees with the Commissioner. *Compare* (Tr. 28-33 *with* Tr. 228-231.)

### VI.  Conclusion

The Court finds that the ALJ did not err by denying Mr. Shorter's request for a prehearing conference. The Court also finds the Commissioner did not violate the local rules by failing to include a statement of facts in her Response breif. Finally, the Court finds the Commissioner's Step 2 RFC and Step 4 determinations are supported by substantial evidence and not based on legal error. Thus, the Court recommends that Mr. Shorter's Motion for Summary Judgment be denied, and judgment entered in favor of the Commissioner. .

### VI.  FINDINGS AND RECOMMENDATION

The Court **FINDS**:

1.  The ALJ did not err by denying Mr. Shorter's request for a prehearing conference;

2.  The Commissioner did not violate the local rules by failing to include a statement of facts in her Response Brief;

3.  The ALJ's determination of Mr. Shorter's severe impairments was supported by substantial evidence and not based on legal error;

4.  The weight the ALJ assigned to the medical testimony in the record was supported by substantial evidence and not base on legal error; and

5. The ALJ's determination at step five was supported by substantial evidence and not based on legal error.

The Court **RECOMMENDS**:

The Commissioner's Motion for Summary Judgement be granted.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS AND RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these Findings and Recommendations within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.  A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made.  The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations.  Failure to timely file written objections may bar a de novo determination by the district judge.

DATED this 15th day of March 2017.

John Johnston
United States Magistrate Judge